## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| **LUISA FERNANDA CALLE MONSALVE,** | § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § § | **EP-21-CV-00058-FM** |
| **CMG FINANCIAL, A DIVISION OF CMG MORTGAGE, INC.,** | § § § | |
| **Defendant.** | § § | |

## <u>ORDER GRANTING MOTION TO DISMISS</u>

Before the court are "Defendant's Motion to Dismiss" ("Motion") [ECF No. 5], filed April 16, 2021 by CMG Mortgage, Inc. d/b/a CMG Financial, misnamed as CMG Financial, a Division of CMG Mortgage, Inc. ("Defendant"); "Plaintiff's Response to Defendant's Motion to Dismiss" ("Response") [ECF No. 8], filed May 3, 2021 by Luisa Fernanda Calle Monsalve ("Plaintiff"); "Defendant's Reply in Support of Motion to Dismiss" ("Reply") [ECF No. 9], filed May 10, 2021; and "Plaintiff's Sur-Reply to Defendant's Reply in Support of Motion to Dismiss" [ECF No. 10], filed May 19, 2021.  Defendant requests Plaintiff's complaint be dismissed with prejudice in its entirety.[1]  After due consideration of the Motion, Response, Reply, Sur-Reply,[2] and applicable law, the Motion is **GRANTED**.

---

[1] "Defendant's Motion to Dismiss" ("Mot.") 1, ECF No. 5, filed Apr. 16, 2021.

[2] Pursuant to Local Rule CV-7(f), a sur-reply may not be filed without leave of court and must be filed not later than seven days after the filing to which it is responsive.  However, the court exercises its discretion to consider all materials currently before it, including the improperly filed sur-reply.

## I.    BACKGROUND

This action arises out of delinquent mortgage payments on a property located at 344 Rio Tinto Drive, El Paso, Texas 79912 ("Property").[3]  Plaintiff and her ex-husband, Ricardo Nahuel Rosales ("Rosales") assumed ownership of the Property on September 13, 2019, during their marriage.[4]  Rosales signed as the borrower on the Note for the purchase of the Property.[5] Defendant is the note holder.[6]  Rosales and Plaintiff both signed the Loan Agreement Addendum ("Addendum"), VA Guaranteed Loan and Assumption Policy Rider ("VA Rider"), and Deed of Trust.[7]

In December 2019, Rosales filed a petition for a divorce from Plaintiff.[8]  In January 2021, Plaintiff learned of a letter to Rosales from Defendant informing Rosales he was delinquent on the mortgage payment.[9]  In March 2021, the Texas court adjudicating the divorce awarded ownership of the Property to Plaintiff.[10]  Plaintiff then attempted to communicate with Defendant about the delinquent mortgage payments.[11]  Defendant would not communicate with

---

[3] "Notice of Removal," ECF No. 1, filed Mar. 10, 2021, "Plaintiff's Original Petition and Application for Ex Parte Temporary Restraining Order, Temporary Injunction, and Permanent Injunction" ("Pet.") ¶¶ 36–42, ECF No. 1-4, Ex. B-1.

[4] *Id*. at ¶¶ 12–13.

[5] *See* Mot., "Note" 1, ECF No. 5-2.

[6] *Id*. at 3.

[7] *See* Pet., "Loan Agreement Addendum" ("Addendum") 1, ECF No. 1-4; Mot., "Deed of Trust" 14, 5-3; Mot., "VA Guaranteed Loan and Assumption Policy Rider" ("VA Rider") 3, ECF No. 5-3.

[8] Pet. ¶ 15.

[9] *Id*. at ¶ 38.

[10] "Plaintiff's Sur-Reply to Defendant's Reply in Support of Motion to Dismiss" ("Sur-Reply") ECF No. 10, filed May 19, 2021, "Final Decree of Divorce" ¶ 7, ECF No. 10-1.

[11] Pet. ¶¶ 39–40.

Plaintiff, because, in its view, Plaintiff was not a signatory to the Note and therefore not a party to the debt.[12]

Plaintiff filed "Original Petition and Application for *Ex Parte* Restraining Order, Temporary Injunction, and Permanent Injunction" against Defendant in Texas state court.[13] Therein, Plaintiff asserts Defendant breached its contractual obligations under the Note or other binding agreement by failing to communicate with Plaintiff, initiating foreclosure, and refusing to allow Plaintiff to cure default on the Note.[14]  Plaintiff also pleads the following causes of action in tort: promissory estoppel, conversion, theft, fraudulent misrepresentation or inducement, fraud by nondisclosure, negligence, gross negligence, breach of fiduciary duty, breach of duty of good faith and fair dealing, *quantum meruit*, and unjust enrichment.[15] Defendant removed the action to federal court on March 10, 2021 and now moves to dismiss Plaintiff's petition.[16]

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure Rule 12(b)(6) allows dismissal of a complaint for "failure to state a claim for which relief can be granted."[17]  "The central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief."[18]  To survive a

---

[12] Mot. 1–2.

[13] *See generally* Pet.

[14] Pet. ¶ 46.

[15] *See generally* Pet.

[16] *See generally id*.

[17] FED. R. CIV. P. 12(b)(6).

[18] *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 (5th Cir. 2002) (internal quotation marks and citation omitted); *see also In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[19] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[20] "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[21] Therefore, a complaint is not required to set out "detailed factual allegations," but it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."[22] Although the court must accept well-pleaded allegations in a complaint as true, it does not afford conclusory allegations similar treatment.[23]

## III.    DISCUSSION

### A.    *Breach of Contract*

Plaintiff's defense of her breach of contract claim hinges on two arguments, neither of which she supports with citation to caselaw. First, she argues it is inconsequential that she did not sign the Note as it is merely one component of the larger "Loan Agreement" as defined by Texas law.[24] As long as she is a party to the Loan Agreement, Plaintiff may state a claim for breach of contract based on Defendant's breach of its obligations under the Note. Second, even if Plaintiff was not already a party to the Note, the divorce decree imposed all mortgage

---

[19] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[20] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[21] *Id*. (citing *Twombly*, 550 U.S. at 556).

[22] *Twombly*, 550 U.S. at 555.

[23] *See Kaiser Aluminum & Chem. Sales, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing *Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)).

[24] Resp. ¶¶ 6–7.

obligations associated with the Property to her.[25]  Both arguments fail for the same reason: whether an individual is a party to a mortgage note is independent from whether she holds title to the encumbered property.

          i.       Whether it is Consequential that Plaintiff Did Not Sign the Note

In Texas, the elements of a valid contract are: (1) an offer; (2) an acceptance in strict compliance with the offer's terms; (3) a meeting of the minds; (4) a communication that each party consented to the terms of the contract; (5) execution and delivery of the contract with an intent it become mutual and binding on the parties; and (6) consideration.[26]  When construing a written contract, the primary goal is to ascertain the true intent of the parties as expressed in the instrument.[27]   In general, only parties to a contract and their successors-in-interest have standing to seek a contract's enforcement.[28]

Section 26.02 of the Texas Business and Commerce Code defines a "loan agreement" as:

> one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of

---

[25] *Id.* at ¶ 3.

[26] *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018).  *See also, e.g., E–Learning LLC v. AT & T Corp.*, 517 S.W.3d 849, 858 (Tex. App.—San Antonio 2017, no pet. h.); *Advantage Physical Therapy, Inc. v. Cruse*, 165 S.W.3d 21, 24 (Tex. App—Houston [14th Dist.] 2005, no pet. h.).

[27] *See e.g.*, *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex. 1983).

[28]  *First Bank v. Brumitt*, 519 S.W.3d 95, 102 (Tex. 2017) (quoting *House v. Hous. Waterworks Co.*, 31 S.W. 179, 179 (1895)).  *See also S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 306 (Tex. 2007) (holding a contract may not be enforced by a third party who incidentally benefits from the agreement where the contract does not expressly state intent to benefit that party); *Kirby Lumber Corp. v. Williams*, 230 F.2d 330, 332–33 (5th Cir. 1956) ("The only proper parties to a suit to foreclose a mortgage are the mortgagor and mortgagee and those whose interests have been acquired subsequently to the date of the mortgage").

money, goods, or another thing of value or to otherwise extend credit or make a financial accommodation.[29]

The parties identify four documents, all signed on September 13, 2019, that comprise the Loan Agreement and are relevant to determining whether Plaintiff shares the debt obligation with Rosales: The Note, Addendum, Deed of Trust, and the VA Rider.  Of these, Plaintiff signed all documents as a "borrower" except the Note.[30]  Rosales alone signed the Note as the borrower.[31]  The Note stipulates Rosales's agreement to pay back Defendant's loan of $139,945.00 in monthly installments.[32]

Plaintiff argues that all four documents together constitute the "Loan Agreement" and should therefore be considered together.[33]  However, the Texas Business and Commerce Code does not make Loan Agreements an indivisible monolith superseding the component contracts. Were that so, it would be irrelevant whether a party signed one agreement and not another in determining obligations.  That is not the case.  Courts considering whether signatories to security instruments, who are not also signatories to promissory notes, are debtors have uniformly determined they are not.[34]  Notes and deeds of trust create two separate sets of rights and

---

[29] TEX. BUS. COMM. CODE 26.02(a)(2).

[30] *See* Addendum" 1; Deed of Trust 14; VA Rider 3.

[31] *See* Mot., "Note" 3, ECF No. 5-2.

[32] *Id*. at 1.

[33] *See* Sur-Reply 2 (citing TEX. BUS. COMM. CODE 26.02(a)(2)).

[34] *Robinson v. Wells Fargo Bank, N.A.*, 576 Fed. App'x 358, 361 (5th Cir. 2014) (unpublished) (holding that a spouse who signs a deed of trust but does not sign the loan or note is not a "borrower" or "debtor" on the note); *Kiper v. BAC Home Loans Servicing, LP*, 884 F.Supp.2d 561, 570–71 (S.D. Tex. 2012); *Smith v. JPMorgan Chase Bank, N.A.*, Civ. A. No. 4:15-CV-00682-ALM, 2016 WL 11472828, at *6 (collecting cases), *report and recommendation adopted*, 2016 WL 4974899 (E.D. Tex. Sept. 19, 2016); *Larson v. OneWest Bank, FSB*, No. 14-14-00485-CV, 2015 WL 6768722, at *9–10 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (holding spouse was not a borrower on the note despite having signed the deed of trust and Loan Agreement); *Darlington v. Specialized Loan Servicing, LLC*, No. 1:18-CV-674-LY-ML, 2019 WL 4999006, at *5 (W.D. Tex. July 30, 2019) (finding that plaintiff, who was not a borrower or debtor, could not bring suit for defendant's failure to give her notice of default,

obligations.[35]  Consent to be bound by one cannot be construed as consent to be bound by all absent language to the contrary.  Therefore, as Plaintiff did not sign the Note and it does not bind her on its face, the court must review the obligations imposed by the Note and Deed of Trust to determine whether these establish an obligation under the Note.

The Deed of Trust is an instrument that grants Defendant a security interest in the Property.[36]  Notably, it expressly defines the obligations imposed on signatories who do not sign the Note:

> [a]ny borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.
>
> Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument . . . .[37]

This language indicates that, although Plaintiff signed as a "borrower," according to the quoted terms of the Deed of Trust, she is in fact a co-signer.  The effect of her signature

---

intent to accelerate, right to cure, or foreclosure despite assignment of debt by divorce decree), *report and recommendation adopted*, 2019 WL 11541361 (W.D. Tex. Aug. 22, 2019).

[35] *See Stephens v. LLP Mortg., Ltd.*, 316 S.W.3d 742, 747 (Tex. App.—Austin 2010, pet. denied) (holding res judicata did not apply to an action pursuing foreclosure after receiving judgment on an action for a promissory note as "[w]hen a debt is memorialized by a note that is secured by a lien, the note and lien constitute separate obligations); *Aguero v. Ramirez*, 70 S.W.3d 372, 374 (Tex. App.—Corpus Christi 2002, pet. denied) (holding a four-year statute of limitations to limit enforcement of a real estate lien but not a promissory note as the "note and lien constitute separate obligations."); *Whittington v. Whittington,* 853 S.W.2d 193, 195 (Tex. App.—Beaumont 1993, no writ) ("Where there is a debt secured by a note, in turn secured by a lien, the note and the lien constitute separate obligations so that suit may be had on the note to obtain a personal judgment, and later suit may be had on the lien if the personal judgment is not satisfied.").

[36] Deed of Trust 2.

[37] *Id*. at ¶ 13.

was to sign over her ownership interest in the Property as security protecting payment of the Note. Texas law acknowledges that signing over a security interest is a contractual relationship distinct from an obligation to make payments on a Note.[38] Therefore, no contractual obligation between Defendant and Plaintiff with respect to the mortgage debt can be inferred from her signature on the Deed of Trust.[39] To find otherwise would render meaningless the second quoted clause in the Deed of Trust, which provides a process by which a co-signer can assume the borrower's obligations in the future. Plaintiff did not plead she acted to assume Rosales's interest after their divorce. Thus, Plaintiff's signature on the Deed of Trust does not create any obligation on the Note.

Plaintiff's signature on the VA Rider also does not indicate acceptance of any obligation to repay the loan or make her a party to the Note. Qualified veterans are entitled to housing benefits, including loan guarantees, pursuant to 38 U.S.C. § 3702.[40] By guaranteeing a home loan, the United States assumes the obligation to repay a specified percentage of a loan upon the default of the primary debtor.[41] The VA Rider states that it amends and supplements the "Security Instrument" to document the

---

[38] *See* 7 TEX. ADMIN. CODE § 153.2(2) ("[a]n owner or an owner's spouse who is not a maker of the note . . . consent[s] to the lien by signing a written consent to the mortgage instrument"); *Alexander v. Wilmington Sav. Fund Soc'y*, 555 S.W.3d 297, 300 (Tex. App—Dallas 2018, no pet.) (holding the Texas constitution does not require both spouses to consent to a home equity note to create a valid lien on a home if both sign the security instrument); *Wilmington Trust, Nat'l Ass'n v. Blizzard*, 702 Fed. App'x. 214, 216 (5th Cir. 2017) (unpublished) (granting summary judgment in favor of a note holder despite a spouse's argument she did not sign the note as "an owner's spouse who is not a maker of the note . . . consent[s] to the lien by signing a written consent to the mortgage instrument.").

[39] *See Robinson v. Wells Fargo Bank, N.A.*, 576 Fed. App'x 358, 361 (5th Cir. 2014) (unpublished) (holding that a spouse who signs a deed of trust but does not sign the loan or note is not a "borrower" or "debtor" on the note).

[40] 38 U.S.C. § 3702 (c)–(d).

[41] 38 C.F.R. § 36.4301.

guaranteed loan"[42]  In this case, the security instrument is the Deed of Trust.[43]  The effect

of the VA Rider is to add additional security for the benefit of the lender.  It does not

modify the terms of the Note.  As such, Plaintiff's signature on the VA Rider also does

not make her a party to the Note.

Finally, Plaintiff signed the Addendum, in which the parties agree to be bound by

the statute of frauds as required by Section 26.02 of the Texas Business and Commerce

Code.[44]  The Addendum characterizes its terms as being "[i]n addition to the covenants

made in the Loan Agreement."[45]  It further states it is "incorporated by and into and shall

be deemed to amend and supplement any and all documents constituting the 'Loan

Agreement'. . . ."[46]  There is no language to suggest that acceptance of the terms in the

Addendum signify intent to be bound to the terms in the Note.  Rather, the simplest

interpretation of the true intent of the parties is to find that Plaintiff intended to be bound

only by the document she signed and not by the one executed simultaneously that she did

not sign.

It is not significant in this case that the Addendum "amends" the Note.

Modification alters only those terms of the original agreement to which it refers.  It leaves

undisturbed any portion of the original agreement not inconsistent with the

---

[42] VA Rider 1.

[43] *Id.*

[44] *See generally* Addendum.

[45] *Id.* at 1.

[46] *Id.*

modification.[47]  The terms of the original agreement, in this case the Note, accepted only
by Rosales, remain unchanged.

                    ii.    <u>Whether the Divorce Decree Imposed Mortgage Obligations</u>

        Plaintiff did not assume any new financial obligation associated with the Property upon
divorce by virtue of the divorce decree.  Transfer of a property or an ownership interest does not
automatically make the transferee responsible for mortgage obligations. [48]  A note holder cannot
collect on the note from a person who is not a signatory.[49]  This is unchanged by the language of
the divorce decree, which purports to shift the mortgage obligation.  In relevant part, the divorce
decree states that Plaintiff "is authorized and entitled to make all payments of principle, interest,
taxes, and insurance on the property, payable to [Defendant]"[50]  However, under Texas law, a
provision in a divorce decree assigning debt to one spouse cannot interfere with a creditor's

---

[47] *See Greenbelt Elec. Coop. v. Johnson,* 608 S.W.2d 320, 324–25 (Tex. Civ. App.—Amarillo 1980, no writ); *Boudreaux Civic Ass'n v. Cox,* 882 S.W.2d 543, 547–48 (Tex. App.—Houston [1st Dist.] 1994, no writ) ("A modification to a contract creates a new contract that includes the new, modified provisions and the unchanged old provisions.").

[48] *See, e.g.*, *Slaughter v. Morris,* 291 S.W. 961, 963 (Tex. Civ. App.—Austin 1926, writ dism'd, w.o.j.) (determining that purchaser of land that was already encumbered by two deeds of trust was not liable for deficiency amount because he did not assume payment of the debt secured by those deeds of trust); *Kansas City Life Ins. Co. v. Hudson,* 71 S.W.2d 574, 576 (Tex. Civ. App.—Waco 1934, writ ref'd) ("[T]he implied agreement arising out of the acceptance of title to land subject to an indebtedness secured by lien thereon . . . can be enforced in this state only by subjecting such property to the satisfaction thereof, and does not create personal liability on the part of the purchaser.").

[49] *See e.g.*, *House v. Hous. Waterworks Co.*, 31 S.W. 179, 179 (1895) ("[N]o person can sue upon a contract except he be a party to or in privity with it.").

[50] Sur-Reply, "Final Decree of Divorce" ¶ 12, ECF No. 10-1.

rights.[51]  As Plaintiff is not a borrower on the Note and has no obligation to the Note holder, she lacks standing to bring a breach of contract claim.[52]

This does not mean Plaintiff is without options.  Those options are simply not within the scope of this lawsuit.  Plaintiff must take two steps to effectuate the terms of the divorce decree.  First, she must secure conveyance of title from Rosales, commonly done through the execution of a special warranty deed.[53]  Once title has been transferred, then Plaintiff may seek to refinance the mortgage in her own name and thereby assume debt obligations.[54]  Refinancing will establish the contractual debtor-creditor relationship that would grant Plaintiff many of the rights and obligations she asserts in this action.

### B.    Promissory Estoppel

Promissory estoppel is an equitable doctrine that provides relief for breach of an otherwise unenforceable promise.[55]  This theory of recovery presumes there is no contract.[56]  The elements of promissory estoppel are: (1) a promise, (2) foreseeability of reliance by the

---

[51] *See e.g.*, *Blake v. Amoco Fed. Credit Union,* 900 S.W.2d 108, 111 (Tex. App.—Houston [14th Dist.] 1995, no writ) (citing *Rush v. Montgomery Ward,* 757 S.W.2d 521, 523 (Tex. App.—Houston [14th Dist.] 1988, writ denied) ("Texas courts have consistently held that a division of the community estate may not prejudice the rights of a creditor to satisfy a community debt."); *Glasscock v. Citizens Nat'l Bank,* 553 S.W.2d 411, 413 (Tex. App.—Tyler 1977, writ ref'd n r.e.) ("[T]he court in a divorce action has no power to disturb the rights which creditors lawfully have against the parties.").

[52] *See First Bank v. Brumitt*, 519 S.W.3d 95, 102 (Tex. 2017).

[53] *See Waite v. Waite*, 150 S.W.3d 797, 799–800 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (describing one of the steps taken to effectuate the division of property in a divorce decree to include the execution of a warranty deed to transfer ownership interest in the home); *Perry v. Perry*, 512 S.W.3d 523, 525 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (same).

[54] *See* Deed of Trust ¶ 13 ("any Successor in Interest of Borrower who assumes Borrower's obligations . . . and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument").  It is common for Texas divorce decrees to include refinancing as an express requirement of the party in possession.  *See, e.g*, *Snodgrass v. Snodgrass*, 332 S.W.3d 653, 657–58 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

[55] *Wheeler v. White*, 398 S.W.2d 93, 96 (Tex. 1965).

[56] *Id*. at 96–97; *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 226 (Tex. 2002).

promisor, and (3) substantial reliance by the promisee to her detriment.[57]  Plaintiff does not

identify any promise outside of the Loan Agreement, which is comprised of several, valid written

contracts.  As such, she does not state facts giving rise to a claim for promissory estoppel.  "If an

alleged promise is part of a valid contract, the promisee cannot disregard the contract and sue for

reliance damages under the doctrine of promissory estoppel."[58]  The language in support of

Plaintiff's promissory estoppel claim is substantially the same as the language in support of her

breach of contract claim.  Without stating what non-contractual agreement gives rise to the claim

for promissory estoppel, Plaintiff cannot state a claim.

      Even had Plaintiff pleaded a promise outside of the Loan Agreement, Plaintiff's claim is

barred by the statute of frauds.  The statute of frauds "is the Legislature's directive that courts

enforce [certain] promises . . . only if such promises are in writing."[59]  Loan agreements in which

the amount involved exceeds $50,000, such as the loan at issue here, are subject to Texas's

statute of frauds.[60]  The only exception exists when the alleged promise is a promise to sign an

already existing written agreement.[61]  Promissory estoppel cannot be used to circumvent Texas's

statute of frauds.  Plaintiff did not state any facts indicating her promissory estoppel claim is

based on a promise by Defendant to permit her to sign a loan agreement at a future date.  As

such, any promise to include Plaintiff on the Note would be unenforceable.

---

[57] *English v. Fischer,* 660 S.W.2d 521, 524 (Tex. 1983).

[58] *Stable Energy, LP. v. Kachina Oil & Gas, Inc.,* 52 S.W.3d 327, 336 (Tex. App.—Austin 2001, no pet.) (citing *Guaranty Bank v. Lone Star Life Ins. Co.,* 568 S.W.2d 431, 434 (Tex. Civ. App.—Dallas 1978, writ ref'd n.r.e.).  *See also BP Am. Prod. Co. v. Zaffirini,* 419 S.W.3d 485, 507 (Tex. App.—San Antonio 2013, pet. denied) (holding that plaintiff's promissory estoppel claim failed as the promise it sought to enforce was in a written lease agreement).

[59] *Nagle v. Nagle,* 633 S.W.2d 796, 799 (Tex. 1982).

[60] TEX. BUS. & COM. CODE § 26.02(b).

[61] *Nagle,* 633 S.W.2d at 799; *Martins v. BAC Home Loans Servicing, L.P.,* 722 F.3d 249, 256–57 (5th Cir. 2013).

### C.     Quantum Meruit and Unjust Enrichment

*Quantum meruit* is an equitable theory of recovery based on an implied agreement to pay for benefits received.[62]  It implies a contract where the parties neglected to form one, but equity requires payment for beneficial services rendered and knowingly accepted.[63]  The doctrine is meant to prevent a party from being "unjustly enriched" by "retain[ing] the benefits of the partial performance without paying anything in return."[64]  The elements of a *quantum meruit* claim are: 1) valuable services or materials were rendered 2) to the person sought to be charged, 3) which were accepted by the person sought to be charged, 4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff expected to be paid by the person sought to be charged.[65]  In general, when a valid, express contract governs the subject matter of the parties' dispute, a plaintiff cannot recover under a quasi-contract theory such as unjust enrichment or *quantum meruit*.[66]

There is substantial confusion among Texas courts over the differences between *quantum meruit* and unjust enrichment and whether unjust enrichment is a cause of action at all.[67] However, this court will proceed as if unjust enrichment is an independent cause of action.

---

[62] *See, e.g, Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 732 (Tex. 2018) (citations omitted); *Heldenfels Bros., Inc. v. City of Corpus Christi,* 832 S.W.2d 39, 41 (Tex. 1992) (citations omitted).

[63] *In re Kellogg Brown & Root, Inc.,* 166 S.W.3d 732, 740 (Tex. 2005).

[64] *Truly v. Austin*, 744 S.W.2d 934, 938 (Tex. 1988).

[65] *Bashara v. Baptist Mem'l Hosp. Sys,* 685 S.W.2d 307, 310 (Tex. 1985).

[66] *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000).

[67] *Compare HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 891 (Tex. 1998) (treating unjust enrichment as an independent cause of action), *Freeman v. Harleton Oil & Gas, Inc.*, 528 S.W.3d 708, 736 (Tex. App.—Texarkana 2017, pet. denied) (treating unjust enrichment as an independent cause of action), *and Pepi Corp. v. Galliford*, 254 S.W.3d 457, 460 (Tex. App.—Houston 2007, pet. denied) ("Unjust enrichment is an independent cause of action."), *with Spellmann v. Love*, 534 S.W.3d 685, 693 (Tex. App.—Corpus Christi-Edinburg 2017, pet. denied) ("[C]ause of action for unjust enrichment . . . fails as a matter of law because it is not an independent cause of action."), *and R.M. Dudley Const. Co., Inc. v. Dawson*, 258 S.W.3d 694, 703 (Tex. App.—Waco 2008, pet. denied) ("Unjust enrichment, itself, is not an independent cause of action.").

Unjust enrichment applies "when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage."[68]  Unjust enrichment "is not a proper remedy merely because it 'might appear expedient or generally fair that some recompense be afforded for an unfortunate loss'. . . or because the benefits to the person sought to be charged amount to a windfall."[69]

Here, the Loan Agreement governs the subject matter of the dispute and set all terms with respect to the repayment of the Note and Defendant's security interest in the Property.  The parties did not neglect to form a contract, but rather formed four contracts settling the terms of each aspect of Defendant's agreement to finance the purchase of the Property.  As contracts govern the subject matter of the dispute before the court, neither *quantum meruit* nor unjust enrichment apply.[70]  Plaintiff finds herself in the difficult position of owning property subject to the debt of another.  However, neither legal theory provides a remedy, despite their basis in equity.

D.      *Conversion*

Conversion is "the wrongful exercise of dominion and control over another's property in denial of or inconsistent with his rights."[71]  Money may be subject to conversion only if it is identifiable as specific chattel and not where indebtedness may be discharged by the payment of money generally.[72]  To be subject to a claim for conversion, money must be (1) delivered for

---

[68] *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).

[69] *Id*. at 42 (quoting *Austin v. Duval,* 735 S.W.2d 647, 649 (Tex. App.—Austin 1987, writ denied)).

[70] *See id*.

[71] *Waisath v. Lack's Stores, Inc.,* 474 S.W.2d 444, 446 (Tex. 1971).

[72] *Mitchell Energy Corp. v. Samson Res. Co.*, 80 F.3d 976, 984 (5th Cir. 1996) (*Dixon v. State*, 808 S.W.2d 721, 723 (Tex. App.—Austin 1991, writ dism'd w.o.j.)).  *See also Paschal v. Great W. Drilling, Ltd.*, 215 S.W.3d 437, 456 (Tex. App.—Eastland 2006, pet. denied) (collecting cases).

safe keeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by the keeper.[73]  Real property is never subject to a claim for conversion.[74]

Plaintiff alleges Defendant "engaged in the conversion of money and property, by failing and/or refusing to comply with its valid and enforceable oral and written promise(s), agreement(s), and/or Contract(s) . . . ."  As Texas law does not recognize a claim for conversion of real property, Plaintiff fails to state a claim with respect to conversion of the Property.  To the extent Plaintiff claims Defendant converted mortgage payments made in satisfaction of its Note, the claim also fails.  The payments were intended to discharge a debt and could have been paid with any money, generally.[75]  They do not constitute specific, identifiable chattel as is required to state a claim for conversion.[76]  In fact, it would be contradictory for Plaintiff to argue otherwise or to deny Defendant's title claim to the money as the crux of her claim is that Defendant ought to be required to accept *more* money to discharge the mortgage.  For the foregoing reasons, Plaintiff has not stated a valid claim for relief based on conversion of either the property or mortgage payments.

---

[73] *Houston Nat. Bank v. Biber*, 613 S.W.2d 771, 774–75 (Tex. App.—Houston [14th Dist.] 1981, writ ref'd) (citing *Jones v. Hunt*, 12 S.W. 832 (Tex. 1889)).  *See also AIG Life Ins. Co. v. Federated Mut. Ins. Co.*, 200 S.W.3d 280, 285 (Tex. App.—Dallas 2006, pet. denied); *Newsome v. Charter Bank Colonial*, 940 S.W.2d 157, 161 (Tex. App.—Houston [14th Dist.] 1996, writ denied).

[74] *Cage Bros. v. Whiteman*, 163 S.W.2d 638, 526 (1942).  *See also Lucio v. John G. & Marie Stella Kenedy Mem'l Found.*, 298 S.W.3d 663, 672 (Tex. App.—Corpus Christi 2009, pet. denied).

[75] *See Mitchell Energy Corp.*, 80 F.3d at 984.

[76] *See Cage Bros.*, 163 S.W.2d at 526.

E.    *Theft*

The Texas Theft Liability Act ("TTLA") controls liability civil actions for theft in Texas.[77]  The TTLA defines "theft" as "unlawfully appropriating property or unlawfully obtaining services" as described by Chapter 31 of the Texas Penal Code.[78]  To "appropriate" means "to bring about a transfer or purported transfer of title to or other nonpossessory interest in property, whether to the actor or another."[79]  Property is not appropriated until it is transferred or acquired.[80]  Plaintiff fails to plead the existence of this essential element.  No property has transferred from Plaintiff to Defendant.  Nor have Defendant's rights in the property substantially changed.  Plaintiff continues to reside on the Property and no foreclosure has yet occurred.

At best, Plaintiff alleges a theft will occur in the future.  There is no cause of action for future theft under either Texas or federal law.  In apparent recognition of this fact, Plaintiff states this claim, along with all other tort claims, "will be ripe, as soon as, and in the event, CMG forecloses on [the Property]."[81]  The possibility of future ripeness is reason to dismiss without prejudice to refiling, not for the court to proceed on the assumption Defendant will eventually violate Plaintiff's rights.  Plaintiff has failed to state sufficient facts to state a claim for theft in the present.

---

[77] TEX. CIV. PRAC. & REM. CODE ANN. §§ 134.001–134.005.

[78] *Id*. at § 134.002(2).

[79] TEX. PENAL CODE ANN. § 31.01(4)(A).

[80] *Porter-Garcia v. Travis L. Firm, P.C.*, 564 S.W.3d 75, 91 (Tex. App.—Houston [14th Dist.], pet. ) (listing the fact that money had not yet been paid as a reason why no theft had occurred) (citing TEX. PENAL CODE ANN. § 31.01(4)(A), (B)).

[81] Sur-Reply 4.

F. *Fraudulent Misrepresentation and Fraud by Nondisclosure*

To recover for fraudulent misrepresentation, or common-law fraud,[82] a plaintiff must prove: (1) a material representation was made; (2) it was false; (3) the speaker knew it was false or the speaker made it recklessly without any knowledge of the truth; (4) it was made with the intention that it be acted upon by the plaintiff; (5) the plaintiff relied upon it; and (6) damage resulted.[83]  Similarly, to recover for fraud based on a failure to disclose, a plaintiff must prove: (1) the defendant deliberately failed to disclose a material fact; (2) the defendant had a duty to disclose; (3) the plaintiff was unaware of the facts and did not have an equal opportunity to discover them; (4) the defendant intended to induce the plaintiff to take some action or refrain from acting, (5) the plaintiff relied on the nondisclosure, which resulted in injury.[84]  In general, there is no duty to disclose in absence of a confidential or fiduciary relationship.[85]  A fiduciary duty arises "as a matter of law in certain formal relationships, including attorney-client, partnership, and trustee relationships."[86]  "[C]onfidential relationships may arise when the parties have dealt with each other in such a manner for a long period of time that one party is justified in expecting the other to act in its best interest."[87]

---

[82] *See Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997) (describing fraud by non-disclosure as a subcategory of common-law fraud, which includes as an element inducement by misrepresentation).

[83] *See, e.g.*, *Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 47–48 (Tex. 1998) (collecting cases).

[84] *Bombardier Aerospace Corp. v SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 219–20 (Tex. 2019).

[85] *Ins. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998).

[86] *Id.*

[87] *Id.*

It is a long-standing rule that where the only injury alleged by a tort claimant is the economic loss stemming from the breach of a contract, the action sounds in contract alone.[88]  In evaluating whether a tort claim exists alongside a claim for breach of contract, courts also consider whether "the defendant's conduct . . . would give rise to liability independent of the fact that a contract exists between the parties . . . ."[89]

Plaintiff asserts Defendant committed fraudulent misrepresentation and fraud by nondisclosure by failing to communicate regarding the Note, initiating foreclosure, and refusing to allow Plaintiff to cure default on the Note.[90]  This language mirrors that in Plaintiff's claim for breach of contract.[91]  Noting the similarity, Defendant argues Plaintiff's fraud claim sounds in contract alone and is therefore barred.[92]  However, the alleged injuries all stem from the terms of the Note, a contract to which Plaintiff is not a party.  As previously established, Plaintiff cannot recover on a breach of contract theory.  Courts that have dismissed tort claims for failure to allege an economic loss distinguishable from that caused by a breach or for a lack of liability independent from the contract, all presume a contractual relationship.[93]  Further, fraudulent inducement claims can coexist with breach of contract claims even where the only damages are

---

[88] *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986).

[89] *Sw. Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493, 494–95 (Tex. 1991).

[90] Pet. ¶¶ 48–49.

[91] *See* Pet. ¶ 46.

[92] Mot. ¶ 34.

[93] *See Reed*, 711 S.W.2d at 618 (holding that a defendant could not be liable for exemplary damages for gross negligence in executing a home construction contract); *DeLanney,* 809 S.W.2d at 495 (holding a defendant could not be liable for negligently failing to publish an advertisement as contracted).

economic.[94]  Accordingly, Plaintiff's fraud claims are not foreclosed simply because she also pleaded breach of contract.

That said, Plaintiff's claims for fraudulent inducement and fraudulent nondisclosure fail due to ordinary pleading deficiencies.  Plaintiff does not state enough facts in support of the first element of fraudulent inducement to support a plausible claim to relief.  Specifically, she does not identify any false material representation.  Instead, she formulaically recites that Defendant "engaged in false, misleading, and/or fraudulent representations omissions, and conduct, by making promise(s), agreement(s), and/or the Contract(s), that [Defendant] would comply with its [agreement]."[95]  This simply reiterates Plaintiff's position that she is a borrower on the Note and Defendant has failed to comply with the Note's terms without providing facts necessary to infer fraud.  Critically missing are statements that Defendant misrepresented Plaintiff's role or otherwise led Plaintiff to believe she was a borrower on the Note at the time the Loan Agreement was executed.

Similarly, Plaintiff does not plead with factual specificity that Defendant deliberately failed to disclose her status with respect to the Loan Agreement at the time it was signed.  She merely states Defendant "failed to disclose that it did not abide by, or intend to abide by, any covenant(s), agreement(s), and/or the Contract(s) . . ."[96]  This is equally as formulaic a recitation. Additionally, Plaintiff does not plead any facts supporting the existence of a fiduciary or

---

[94] *Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 46–47 (Tex. 1998) (holding that if a plaintiff presents legally sufficient evidence on each of the elements of a fraudulent inducement claim, any damages suffered as a result of the fraud sound in tort even in the presence of an actionable breach of contract).

[95] Pet. ¶ 48.

[96] *Id*. at ¶ 49.

confidential relationship of the kind that would give rise to a duty to disclose.[97]  While she lists a breach of fiduciary duty among her claims, Plaintiff does not state what sort of fiduciary relationship exists between Defendant and herself.  As such, both fraud claims are facially deficient.

G.      *Negligence and Breach of Special Duties*

Plaintiff's remaining causes of action are for: negligence, gross negligence, breach of fiduciary duty, and breach of duty of good faith and fair dealing.  The elements of a negligence claim under Texas law are: (1) the existence of a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately caused by the breach.[98]  The existence of a duty is a threshold question of law to be decided from the surrounding facts.[99]  A duty of good faith and fair dealing may, but does not always, arise from a contractual relationship.[100]  Such a duty is recognized only where the contract expressly provides for it or where there is a special relationship between the parties.[101]  The relationship between a borrower and a lender does not create a fiduciary relationship.[102]  In fact, it does not give rise to *any* special relationship barring excessive lender control or influence over the borrower's financial activities.[103]  "To impose an

---

[97] *See Ins. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998).

[98] *See, e.g.*, *Bustamante v. Ponte*, 529 S.W.3d 447, 456 (Tex. 2017).

[99] *Thapar v. Zazulka*, 994 S.W.2d 635, 637 (Tex. 1999).

[100] *English v. Fischer,* 660 S.W.2d 521, 522 (Tex. 1983).

[101] *Manges v. Guerra*, 673 S.W.2d 180, 183 (Tex. 1984).

[102] *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962).

[103] *Fed. Deposit Ins. Corp. v. Coleman,* 795 S.W.2d 706, 708–09 (Tex. 1990); *Farah,* 927 S.W.2d at 675; *Mfrs. Hanover Trust Co. v. Kingston Inv. Corp.,* 819 S.W.2d 607, 610 (Tex. App.—Houston [1st Dist.] 1991, no writ).  *See also Milton v. U.S. Bank Nat. Ass'n*, 508 Fed. App'x 326, 329 (5th Cir. 2013) (unpublished) (Plaintiff's negligence and gross negligence claims fail because, under Texas law, there is 'no special relationship between a mortgagor and mortgagee' that would give rise to a stand-alone duty of good faith and fair dealing.").

informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist prior to, and apart from, the agreement that is the basis of the suit."[104]

Plaintiff's claims presume the existence of a contractual relationship that imposed fiduciary and good faith and fair dealing duties on Defendant.  The court already determined Plaintiff is not a borrower under the Note and therefore cannot state a claim for the breach of any obligation arising from it.  Plaintiff is a party to the other documents in the Loan Agreement, but these do not contain express language creating either a duty of good faith or fair dealing or a fiduciary relationship.  Texas law is clear that courts cannot imply an independent duty of good faith or fair dealing not expressly included in a contract or created by a special relationship.[105]

Even were Plaintiff a borrower under the Note, the relationship between a borrower and a creditor does not give rise to a special relationship.[106]  The borrower-lender relationship is the only relationship Plaintiff pleads.  She does not state any facts supporting the conclusion that another form of relationship of trust and confidence, such as a fiduciary relationship, existed between the parties outside of the execution of the Loan Agreement.  Plaintiff therefore cannot establish Defendant owed her any legal duty.  As such, she fails to state a claim for which relief can be granted based on negligence, breach of the duties of good faith and fair dealing, or a fiduciary relationship.

---

[104] *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 287 (Tex. 1998).

[105] *See Fed. Deposit Ins. Corp.,* 795 S.W.2d at 708–09.

[106] *See Thigpen v. Locke,* 363 S.W.2d 247, 253 (Tex. 1962)

IV.    **CONCLUSION**

Plaintiff fails to state a claim for which relief can be granted with respect to any claim before the court.  Accordingly, it is **HEREBY ORDERED** that "Defendant's Motion to Dismiss" [ECF No. 5] is **GRANTED**.

**SIGNED AND ENTERED** this <u>15th</u> day of **June 2021**.

**FRANK MONTALVO**
**UNITED STATES DISTRICT JUDGE**

22